IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| TIC UNITED CORP., | § | CASE NO. 00-37234-SAF-7 |
| | § | |
| MITCHELL G. WILLIS, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: |
| | § | 3:05-CV-0557-P |
| JOHN H. LITZLER, Chapter 7 Trustee, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Appellant Mitchell G. Willis' ("Appellant") appeal of the Bankruptcy Court's denial of his motion to reconsider its denial of Appellant's motion to vacate. After careful consideration of the briefing and applicable law, the Court hereby AFFIRMS the Bankruptcy Court's ruling.

## FACTS

Debtor TIC United Corp. ("TIC", "Debtor", or "Appellee"), a trucking business, filed its Chapter 11 bankruptcy petition on November 7, 2000, and thereafter continued operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. TIC's bankruptcy proceeding was subsequently converted to a Chapter 7 liquidation proceeding on March 3, 2003.

In March 2002, without moving to lift the automatic stay, Appellant filed a state court lawsuit in Harris County ("State Court Lawsuit"). The State Court Lawsuit stems from a vehicle accident

1

that occurred when a vehicle driven by Judy Wohlscheid struck Appellant's vehicle, causing injury to Appellant. Appellant sued Wohlscheid, who happened to be a driver covered by TIC's liability insurance policies.

During the course of the bankruptcy proceeding, the Trustee became concerned about TIC's exposure to potential liability arising from its both pre- and post-petition operation of its trucking business. Accordingly, in an attempt to funnel all potential damage claims together, the Trustee filed a motion seeking mandatory alternative dispute resolution of all potential damage claims. The Bankruptcy Court held a hearing on the matter on January 28, 2004 and entered an order granting the ADR motion on April 1, 2004 ("Order").

In its Order, the Bankruptcy Court recognized that, due to the nature of its business (*i.e.* operating vehicles), TIC was exposed to a great deal of actual and potential tort liability as well as other types of claims including workers compensation claims, product liability claims, and WRIP claims. (R. at 9.) Pursuant to Section 362(a) of the Bankruptcy Code, the prosecution of these damage claims against TIC were stayed by the filing of the bankruptcy case. *See* 11 U.S.C. § 362(a). The Bankruptcy Court considered that in the absence of an alternative mechanism for the liquidation of the damage claims, TIC and its creditors would have to bear the expense of defending multiple lift stay motions, and the court's docket would become clogged with hearings on such motions. (R. at 10.) Additionally, the Bankruptcy Court noted that if the stay was lifted for these actions, TIC's funds and the Trustee's personnel and resources would become involved in a myriad of state court litigation matters. The Bankruptcy Court also recognized that the ADR procedure would inure to the benefit of the damage claimants and all other interested parties because it would encourage swift settlement and prompt payment. Additionally, the litigation defense costs that would be incurred

if Debtor had to defend each lawsuit would deplete the assets of the estate and affect the amounts that other claimants would ultimately receive through the liquidation. (R. at 11.) The Bankruptcy Court concluded that "a balancing of the interests of the Damage Claimants and the interests of the Debtor and its creditors mandate the establishment of a simple economical procedure for the resolution of tort claims that preserves the rights of the parties, including their right of access to the courts if such claims are not settled and resolved during the course of such procedure." (R. at 11.) If a claimant fails to resolve his dispute through this ADR process, the claimant is entitled to petition the bankruptcy court for a lift of the stay to permit the claimant to proceed with his litigation in state court. (R. at 453.)

On April 28, 2004, the Trustee served notice of the Order on all known holders of damage claims. Appellant was listed on the service list, but with an incorrect address. Appellant did not receive notice of the ADR Order until after April 28, 2004.

On December 1, 2004, Appellant filed a motion to vacate the portion of the Bankrtupcy Court's Order that affected Appellant. (R. 360-98.) On January 7, the Bankruptcy Court heard oral argument on the motion and denied same. (R. 440-54.) Appellant asked the Bankruptcy Court to reconsider its ruling. (R. at 422-27.) Appellant's motion was denied. (R. 3-4.) Appellant now appeals the Bankruptcy Court's decision to this Court. (R. at 1-2.)

## ISSUES ON APPEAL

Appellant alleges the following issues in his appeal:

1) Whether the Bankruptcy Court has subject matter jurisdiction to enjoin Appellant's State Court Lawsuit;

2) Whether the Trustee has met his burden to obtain an injunction against Appellant's State Court Lawsuit;

3) Whether the Bankruptcy Court's injunction against Appellant's State Court Lawsuit is narrowly tailored so that Appellant will not be prejudiced; and

4) Whether Appellant is entitled to an adversary proceeding to determine the extent, if any, of an injunction against Appellant's State Court Lawsuit.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 1334(b), district and bankruptcy courts have jurisdiction over four types of bankruptcy matters: (1) cases arising under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. *See* 28 U.S.C. § 1334(b).

The first category refers to the bankruptcy petition itself. The second, third, and fourth categories operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy. *See In re Canion*, 196 F.3d 579, 584-85 (5th Cir. 1999); *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

"A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' More specifically, '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankruptcy estate.' This test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022.

An insurance policy owned by the debtor is generally considered property of the estate. *See In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2002). "But, whether the proceeds of a

4

particular insurance policy is property of the estate depends on the nature of the policy." *Id.* The main question a court must consider when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to the debtor when the insurer pays a claim. *See id.* Thus, "when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate." *Id.*

Appellee explains the nature of its insurance policies as follows: The Debtor's insurance policies are occurrence-based policies. The Debtor was self-insured up to one million dollars per accident or occurrence under its auto liability and general liability policies. (R. at 448). This limit is referred to as a "self-insured retention limit" or "SIR."

Thus, these policies are structured in such a way that if the Debtor owes a tort damage payment or if litigation expenses are incurred in connection with a tort claim, the Debtor is responsible for payment up to the million dollar SIR amount. (R. at 448-49.)

When the Debtor filed his bankruptcy petition, the Debtor stopped paying any SIR amounts due under the policy. However, the Debtor's obligation to pay the applicable SIR amounts is secured by a letter of credit now posted by Bank of America. The letter of credit is secured by estate assets and has approximately $4.3 million remaining. Thus, if the insurance company pays out defense costs and indemnity costs within the SIR on behalf of the Debtor, the insurer will draw down on the letter of credit, with a corresponding effect on estate assets. In addition, during the bankruptcy proceedings, the Debtor transferred approximately $1.28 million cash to its insurer. The current remaining balance of the cash is approximately $500,000. The insurer also has the right to draw down on the cash for any insurance payment made on the Debtor's behalf. If the insurer does not

exhaust the cash, the remainder of the cash will return to the estate. Thus, the cash is estate property.

Accordingly, each tort claim, including Appellant's claim, can affect the Debtor's bankruptcy estate by decreasing the amount of available assets, *i.e.* the letter of credit or the cash if the stay is lifted and litigation pursued. Thus, Appellee argues, these tort claims are sufficiently "related to" the bankruptcy proceeding to meet the jurisdictional requirements.

Appellant argues that Appellee has failed to present any actual evidence demonstrating that the estate will receive a refund depending on how much money the insurance company uses. However, during the hearing on the motion to vacate, Appellee presented copies of the relevant policies that demonstrate that Debtor is subject to the applicable SIR levels. (R. at 448-49.) Moreover, it is this bankruptcy proceeding that prompted Debtor and its insured to secure the letter of credit and set aside cash for payments owed under the insurance policy.

Based on these facts, the Court concludes that the Bankruptcy Court had jurisdiction to enter its Order approving the Trustee's ADR motion.

Appellant's second, third, and fourth issues on appeal presume that the Bankruptcy Court issued an injunction against Appellant's State Court Lawsuit. However, Appellant's characterization of the ADR Order as an injunction against his State Court Lawsuit is flawed.

The institution of the bankruptcy proceeding caused a stay to be issued on Appellant's State Court Lawsuit. *See* 11 U.S.C. § 362(a). Before Appellant could proceed with his State Court Lawsuit, he would have to file a motion with the Bankruptcy Court to lift the stay. The Bankruptcy Court's ADR Order merely requires litigants with claims against the estate to make a good faith effort to resolve their disputes through the ADR process before the Court will consider a motion for relief from the stay.

6

Appellant has not provided the Court with good cause for excluding him from the ADR Order and lifting the stay. The requirement to participate in the ADR process is not a burdensome requirement and, in fact, will likely cost Appellant less time and money than would litigation. Appellant's right to a trial by jury remains protected. He simply must make a good faith effort to settle his dispute - like nearly 200 others - before the stay will be lifted.

For these reasons, the Court hereby AFFIRMS the Bankruptcy Court's orders denying Appellant's Rule 60(b)(4) motion to vacate/motion to lift stay and denying Appellant's motion for reconsideration, and hereby DISMISSES Appellant's appeal.

It is SO ORDERED, this 29th day of July 2005.

*(signature)*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE